UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OLIVER DAWOUD,

          **Plaintiff,**

**v.**                                                                         **Case No:  6:18-cv-369-Orl-40DCI**

ACRYLIC TANK MANUFACTURING
OF NEVADA,

          **Defendant.**

_____

REPORT AND RECOMMENDATION

    This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AS TO COUNT I (Doc. 51)** |
| **FILED:** | **November 30, 2018** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

I.    **Background**

    A.  **The Agreement & Breach**

    In December 2014, Plaintiff, who resides in Seminole County, Florida, entered into an agreement with Defendant, a well-known aquarium manufacturer located in Las Vegas, Nevada, to have a "sizable saltwater aquarium" built at Plaintiff's residence.  Doc. 1 at ¶¶ 1-2, 11.  That same month, Plaintiff paid Defendant $10,000.00 as a deposit for the aquarium.  *Id*. at ¶ 13.  The project, however, was immediately plagued with delays.  *See id*. at ¶¶ 19-22.

On March 11, 2015, Plaintiff spoke with a member of Defendant's sales and design team, Frankie DiLuzio, about the progress of the aquarium. *Id*. at ¶ 23. Although no work had been completed on the project, Mr. DiLuzio informed Plaintiff that Defendant was estimating that the aquarium would cost approximately $368,525.00 and that Defendant needed an additional $137,410.00 to continue working on the aquarium. *Id*. at ¶ 24. Shortly thereafter, Plaintiff paid Defendant $137,410.00. *Id*. at ¶ 26. Despite the additional payment, the project was still plagued with delays. *See id*. at ¶ 28.

In light of the continued delays, on May 7, 2015, Plaintiff sent an email to Mr. DiLuzio expressing his concern about the delays and Defendant's unresponsiveness. *Id*. at ¶ 29. In response, Mr. DiLuzio sent an email to Plaintiff explaining that the deposits were dispersed to several companies involved in building the aquarium and that the process of building a custom aquarium "takes time[.]" *Id*. at ¶ 30. In response, Plaintiff sent an email to Mr. DiLuzio clarifying that he was not looking for an immediate resolution of the ongoing issues but simply wanted to be kept apprised of the aquarium's progress. *Id*. at ¶ 31. Rather than providing an update about the aquarium, Defendant's vice-president and chief operating officer, Brett Raymer, sent Plaintiff an email again explaining that his deposits were dispersed to various companies involved in building the aquarium. *Id*. at ¶ 32. In addition, Mr. Raymer informed Plaintiff that the aquarium would cost between $750,000.00 and $900,000.00 and, as a result, Plaintiff would need to make additional payments for the project to continue. *Id*. at ¶ 34. However, Defendant apparently did not request that Plaintiff make any specific, additional payments. *See id*.

On May 12, 2015, Plaintiff sent an email to Defendant explaining that he was "at [his] budget for [the] project" and hoped the parties could resolve any issues quickly. *Id*. at ¶ 35. In that same email, Plaintiff offered to accept the piece of acrylic and the device that moves the

acrylic[1] in exchange for the monies he had already paid Defendant.  *Id*. at ¶ 36.  Defendant, however, failed to respond to the email.  *Id*. at ¶ 37.

Plaintiff, subsequently, retained counsel and demanded Defendant return all the payments Plaintiff made in connection with the aquarium.  *Id*. at ¶ 38.  Defendant refused.  *Id*. at ¶¶ 38-39.  As of the date this case was filed, Defendant has not resumed work on the aquarium, has not refunded Plaintiff's payments, and has not provided Plaintiff with the acrylic or any other parts for the aquarium.  *Id*. at ¶ 40.

### B.  The Complaint

On March 9, 2018, Plaintiff filed a complaint against Defendant asserting the following claims: Count I – breach of contract; Count II – unjust enrichment; Count III – quantum meruit; and Count IV – violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA).  Doc. 1 (Complaint).   In the Complaint, Plaintiff requested, among other things, an award of compensatory damages.  *Id*. at 9.

### C.  Procedural History

On March 21, 2018, Plaintiff served Defendant.  Doc. 13.

In light of Defendant's failure to respond to the Complaint, on May 8, 2018, Plaintiff moved for entry of clerk's default.  Doc. 14.

On May 9, 2018, the Clerk entered default against Defendant.  Doc. 15.

On June 28, 2018, Defendant, though counsel, filed its answer and affirmative defenses.  Doc. 17 (Answer).  That same day, Defendant also filed a motion to set aside default.  Doc. 18.  The Court denied the motion to set aside default without prejudice.  Doc. 20.  As a result, on July

---

[1] It is not clear whether the acrylic or the device designed to move the acrylic were even manufactured at the time Plaintiff sent the email.

2, 2018, Defendant filed an amended motion to set aside default.   Doc. 21 (Motion to Set Aside). In its Motion to Set Aside, Defendant argued that it was not properly served with the Complaint and, thus, the default should be set aside.  *Id*.

On July 19, 2018, Plaintiff filed a motion to strike the Answer.  Doc. 24 (Motion to Strike). In the Motion to Strike, Plaintiff argued that the Answer should be stricken as untimely.  *Id*. at 3. Alternatively, Plaintiff argued that Defendant's affirmative defenses should be stricken because they did not comply with the pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  *Id*. at 4, 13, 16.  Further, Plaintiff argued that several of the affirmative defenses should be stricken as redundant.  *Id*. at 16.  In light of these arguments, Plaintiff requested that the Court strike each of Defendant's affirmative defenses.  *Id*. at 8.

Later that same day, the Court entered an order granting the Motion to Set Aside and, thus, directed the Clerk to set aside the default entered against Defendant.  Doc. 25.

Absent a response to the Motion to Strike, on August 6, 2018, the Court entered an order granting the Motion to Strike as unopposed and directed Defendant to file an amended answer no later than August 15, 2018.  Doc. 28.  Defendant never filed an amended answer.

After August 15, 2018, Defendant's counsel made several attempts to withdraw from the case.  Docs. 29; 31; 36; 43.

On October 8, 2018, Plaintiff moved for clerk's default against Defendant.  Doc. 44 (Motion for Default).

After a hearing concerning Defendant's counsel's request to withdraw, on October 16, 2018, the Court entered an order granting Defendant's counsel's request to withdraw.  Doc. 47 (Order).  In doing so, the Court directed Defendant's counsel to notify and serve Defendant with the Order.  *Id*. at 3.  The Court also warned Defendant that "any motion – including the Motion

for Default – not responded to within the time provided by the rules of this Court will be deemed unopposed and ruled upon without further warning." *Id.* at 4.

On October 17, 2018, Defendant's counsel file a notice confirming that he provided Defendant with a copy of the Order and notified Defendant that it can only proceed in this case through counsel.  Doc. 48; *see* Local Rule 2.03(e).

No counsel appeared on Defendant's behalf following the Order.  Thus, Defendant did not respond to the Motion for Default.  As a result, on October 24, 2018, the Clerk entered default against Defendant.  Doc. 49.

### D.  Motion for Default Judgment

On November 30, 2018, Plaintiff filed a motion for default judgment and a supporting affidavit.  Docs. 51 (Motion); 51-1.  In the Motion, Plaintiff seeks default judgment under Count I of the Complaint.  *Id.* at 9-10.[2]  Specifically, Plaintiff argues that the well-pled allegations establish that there was a valid agreement to build an aquarium, Defendant breached that agreement, and Plaintiff was damaged.  *Id.*  As a result of Defendant's breach of contract, Plaintiff requests that he be awarded a total of $147,410.00 in damages against Defendant, plus post-judgment interest at the statutory rate.  *Id.* at 10.

## II.  Standard of Review

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment.  First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.  Fed. R. Civ. P. 55(a).  Second,

---

[2] Plaintiff did not present any argument that he is entitled to default judgment on his remaining claims (Counts II, III, and IV) and expressly dropped his FDUTPA claim (Count IV).  Doc. 51 at ¶ 41.

after obtaining clerk's default, the plaintiff must move for default judgment.  Fed. R. Civ. P. 55(b).

Before entering default judgment, the court must ensure that it has jurisdiction over the claims and

parties, and that the well-pled factual allegations of the complaint, which are assumed to be true,

adequately state a claim for which relief may be granted.  *See Nishimatsu Constr. Co. v. Houston*

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[3]

 A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard does not require detailed factual

allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)).  Thus, the "complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at

570).  To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer

possibility" of unlawful activity by a defendant and offer "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing

*Twombly*, 550 U.S. at 556).  If a plaintiff fails to meet this pleading standard, then the plaintiff will

not be entitled to default judgment.

 If the plaintiff is entitled to default judgment, then the court must consider whether the

plaintiff is entitled to the relief requested in the motion for default judgment.  If the plaintiff seeks

damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of

damages sought in the motion for default judgment.  *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D.

679, 681 (M.D. Fla. 2008).  Unlike well-pled allegations of fact, allegations relating to the amount

---

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit
handed down prior to the close of business on September 30, 1981.  *Bonner v. City of Prichard*,
661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. *Id.* (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)).   Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages).   Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.   *See Adolph Coors*, 777 F.2d at 1543-44. However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

III.   **Analysis**

   A.   **Subject Matter Jurisdiction**

      Plaintiff alleged that the Court has diversity jurisdiction over this case.   Doc. 1 at ¶¶ 6-7. A federal court has diversity jurisdiction over civil actions where there is complete diversity of citizenship among the opposing parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.   28 U.S.C. § 1332(a).   Plaintiff has sufficiently demonstrated that the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of

interest and costs.  Doc. 1 at ¶¶ 1-2, 13, 26, 40-41.  Therefore, the undersigned finds that the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

### B.  Personal Jurisdiction

The undersigned finds that the Court has personal jurisdiction over Defendant, a Nevada corporation, because it appeared in this action through counsel and answered the Complaint without timely raising a defense of lack of personal jurisdiction.  *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) (explaining that "[a] party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent.").

### C.  Default

Defendant appeared in this action through counsel and answered the Complaint.  Doc. 17. The Court, subsequently, struck the Answer and directed Plaintiff to file an amended answer by August 15, 2018.  Doc. 28.  Defendant never filed an amended answer.  In light of Defendant's failure to file an amended answer, Plaintiff moved for clerk's default, which the Clerk entered on October 24, 2018.  Docs. 44; 49.  The undersigned finds that the Clerk properly entered default against Defendant for failure to timely respond to the Complaint.

### D.  Breach of Contract

Plaintiff claims that the parties entered into a valid agreement for an aquarium to be built and installed at his residence.  Docs. 1 at ¶ 11; 51 at ¶ 38.  Plaintiff argues that Defendant breached the agreement "by, amongst other things, significant delays, exponentially increasing the Project costs, prematurely requesting additional payments, failing to construct the Aquarium at [Plaintiff's] residence, failing to deliver any of the materials to build the Aquarium, and abandoning the incomplete Aquarium Project while retaining [Plaintiff's] full payment amounts."

Docs. 1 at ¶ 49; 51 at ¶ 38.  As a result of Defendant's breach, Plaintiff argues that he suffered a total of $147,410.00 in damages, which represents the amount Plaintiff paid to Defendant for the aquarium that was never delivered.  Docs. 1 at ¶ 52; 51 at ¶¶ 38, 42.

In order to plead a claim for breach of contract under Florida law, a plaintiff must assert the following: 1) existence of a valid contract; 2) a material breach of the contract; and 3) damages resulting from the breach.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008)).[4]  To constitute a material breach, a party's nonperformance must "go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part." *Beefy Trail, Inc. v. Beefy King Intern., Inc.*, 267 So.2d 853, 857 (Fla. 4th DCA 1972).  A party's "failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach."  *Id.*

Accepting the well-pled allegations of the Complaint as true, the following facts have been established.  Plaintiff and Defendant entered into the Agreement, in which Plaintiff agreed to pay Defendant to build an aquarium for Plaintiff's residence.  Doc. 1 at ¶ 11.  Upon Defendant's request, Plaintiff paid Defendant a total of $147,410.00 for the aquarium.  *Id.* at ¶¶ 13, 24, 26.  After numerous delays and rising estimates, Plaintiff offered to accept the acrylic for the aquarium and the device that moves the acrylic in exchange for the monies he already paid Defendant.  *Id.*

---

[4] Although Plaintiff does not address which state's law applies in this case, the undersigned has nevertheless elected to apply Florida law in determining whether Plaintiff has stated a claim for breach of contract.  The elements of a claim for breach of contract under Florida and Nevada law are identical.  *See Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) ("Nevada law requires the plaintiff in a breach of contract action to show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.") (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)).  Thus, the Court's resolution of Count I of the Complaint will be the same regardless of whether it applies Florida or Nevada law.

at ¶¶ 30-36.   Defendant did not respond to Plaintiff's offer.   *Id.* at ¶ 37.   Subsequently, Plaintiff demanded that Defendant return all the payments Plaintiff made in connection with the aquarium. *Id.* at ¶ 38.   Defendant refused to provide any materials to Plaintiff and refused to refund the money that Plaintiff paid.   *Id.* at ¶ 39.   As of the date the Complaint was filed, Defendant has not resumed work on the aquarium, has not refunded Plaintiff's payments, and has not provided Plaintiff with the acrylic or any other parts for the aquarium.   *Id.* at ¶ 40.   In light of the foregoing, the undersigned finds that the well-plead allegations, which must be accepted as true, establish that the parties entered into a valid agreement, Defendant breached that agreement, and Plaintiff suffered damages as a result of that breach.   Therefore, the undersigned finds the Plaintiff is entitled default judgment on Count I of the Complaint.

### E.   Damages.

Plaintiff requests a total of $147,410.00 in damages, which represents that amount Plaintiff paid Defendant under the agreement.   Doc. 51 at ¶ 42.   There is no evidence that Plaintiff received anything in exchange for the monies he paid to Defendant under the agreement.   *See* Docs. 1 at ¶ 40; 51-1 at ¶ 12.   Thus, the undersigned finds that the amount Plaintiff seeks is a sum certain, and that Plaintiff is entitled to recover the amount he paid to Defendant in connection with the aquarium, i.e., $147,410.00.

Plaintiff also seeks an award of post-judgment interest at the statutory rate.   Doc. 51 at ¶ 42.   The Court applies the federal interest statute, 28 U.S.C. § 1961(a), in a diversity case, rather than the state interest statute.   *G.M. Brod & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1542 (11th Cir. 1985).   Thus, the undersigned finds that Plaintiff is entitled to post-judgment interest at the legal rate pursuant to 28 U.S.C. § 1961 from the date the Court enters final judgment.

## IV.    Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.  The Motion (Doc. 51) be **GRANTED**;

2.  The Court enter judgment in favor of Plaintiff and against Defendant in the total amount of $147,410.00, plus post-judgment interest at the legal rate pursuant to 28 U.S.C. § 1961; and

3.  The Clerk be directed to close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on February 11, 2019.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy